CYRUS H. WICKER, and his wife, GRACE W. WICKER, *Appellants,* v. TRUST COMPANY OF FLORIDA, as Trustee, *Appellee.*

147 So. 586.

Opinion filed April 13, 1933.

412

*John M. Murrell*, for Appellants;
*Redfearn & Ferrell*, for Appellee.

Davis, C. J.—On September 1, 1926, Cyrus F. Wicker executed to Trust Company of Florida, a corporation, as trustee, sixty-two mortgage bonds aggregating a principal of $15,000.00. A mortgage to the trustee was given as security. Upon foreclosure proceedings brought to enforce the mortgage the defendants filed an answer to the effect following:

That the execution of the bonds and mortgage was admitted; that defendants had signed an application for loan of $15,000.00 but had received only the sum of $8,196.48; that the Marion Mortgage Company and the Trust Company of Florida, although separate corporate entities, were at the time of the negotiation of the loan, controlled and officiated

by the same individuals; that the method used by them in handling defendant's loan and in disbursing the proceeds of it were a mere scheme and subterfuge to cover up the usurious character of the loan and to charge the defendants $6,803.52 interest on an actual principal sum of only $8,196.48; that although bonds and a mortgage for $15,000.00 had been exacted by defendants, that in reality they had received from the true lender but $8,196.48; that in consequence thereof, defendants, while in default under the mortgage, were entitled to affirmative relief by the decreeing of a forfeiture of the entire principal, inasmuch as the interest wilfully demanded and received had amounted to more than 25 per cent. per annum on the real principal.

A general master reported concerning the facts of the controversy as follows:

"The complainant in this case seeks the foreclosure of a mortgage given to it, as Trustee, by the defendants, securing an indebtedness of $15,000.00. The giving of the mortgage is admitted by the defendants, and likewise that there has been a default in the payment of the amounts due under the mortgage. The defendants, however, set up as a defense, that the mortgage is usurious, and also that they received only a small portion of the amount they should have received out of the proceeds of the loan.

"It appears by the testimony that the defendant, Cyrus F. Wicker, made a written application to the Marion Mortgage Company for it to negotiate for him a loan upon the property involved in this case for the purpose of constructing a building thereon, agreeing to pay the Marion Mortgage Company a certain compensation for its services; that the Marion Mortgage Company procured a loan of $15,000.00 from the Trust Company of Florida, as Trustee; that the Trust Company of Florida charged the account of Wicker

with $15,000.00 and credited the account of the Marion
Mortgage Company with $14,000.00, the Trust Company of
Florida retaining $900.00 as a fee to be paid to it by the
Marion Mortgage Company for making the loan. The
testimony further shows that various sums' were paid to
or for the account of the defendant Wicker by the Marion
Mortgage Company, totaling, as it claims, the amount
received by it from the complainant.

"It is contended by the defendant Wicker that the Marion
Mortgage Company and the Trust Company of Florida,
although separate corporate entities, were at the time of
the negotiating of said loan and the handling of such money,
controlled and officered by the same parties, and that the
method used by the Marion Mortgage Company and the
Trust Company of Florida in the handling of said loan
and the disbursing of the proceeds, was a subterfuge and
scheme to cover up the usurious character of the loan.

"In the opinion of your General Master, however, the
testimony is uncontradicted that the defendant Wicker
entered into a contract with the Marion Mortgage Com-
pany to procure a loan for him; that the Marion Mortgage
Company did procure the loan through the Trust Company
of Florida, and that the Trust Company of Florida actually
credited the Marion Mortgage Company with the proceeds
of the loan, less $900.00.

"It also appears by the testimony, that, while the Trust
Company of Florida advanced its own money in making
this loan, it thereafter sold a large portion of the bonds
secured by the mortgage to various and sundry persons,
who are now the owners and holders thereof. The mere
fact that the Trust Company of Florida and the Marion
Mortgage Company may have been officered by the same
individuals at the time of the execution and delivery of

said mortgage is not, in my opinion, sufficient to defeat the foreclosure of the mortgage by the Trust Company of Florida, as Trustee, in the absence of any proof whatever that it did not part with the proceeds of the loan or that it, as a corporation, has benefitted in any way except to the extent of $900.00 by the actions of the Marion Mortgage Company in disbursing the funds for the defendant Wicker; nor does the fact that the defendant Wicker may have a cause of action against the Marion Mortgage Company for the improper distribution of said funds, as to which no opinion is expressed, affect the liability of the defendant to pay the indebtedness evidenced by the complainant's mortgage and the bonds which it secures. The Marion Mortgage Company is not a party to this suit, and it is the opinion of your General Master that, to sustain the defense set up in this cause by the defendants, or to allow any deduction by reason of any funds which the Marion Mortgage Company received and which it may not have properly disbursed, would require the litigation in this cause of rights between the Marion Mortgage Company and the defendants. This would likewise be true of the alleged improper payments made by the Marion Mortgage Company to the contractor erecting the building upon the mortgaged premises.

"While it is true that the Trust Company of Florida and the Marion Mortgage Company were, at the time of the making of this loan, officered by the same individuals, there is no testimony in this case which would indicate in any way that the Trust Company of Florida or its stockholders profited in any degree by an alleged misapplication of the funds shown by the testimony to have gone into the hands of the Marion Mortgage Company, save and except the sum of $900.00 hereinbefore referred to. In the absence

of such proof, it is the opinion of your General Master that the defendants have not made out the defense set up in their answer, even if it should be considered that the $900.00 admitted to have been received by the Trust Company of Florida was by way of interest, the same would not appear to make the mortgage usurious."

The final decree entered by the Chancellor approved the Master's findings in substance and foreclosed the mortgage for the total debt claimed. The appeal is from the final decree.

Usury, under Section 6942 C. G. L., 4855 R. G. S. is a crime.* And he who alleges it as a defense to avoid or to defeat an obligation to pay money, must establish his charge by clear and satisfactory evidence. White v. Benjamin, 138 N. Y. 623, 33 N. E. Rep. 1037.

Where a transaction involves payment of a consideration *for the use of money,* and the consideration contemplated to be paid and received by the party advancing the money is beyond the maximum amount authorized by a statute

---

*Section 6942 reads as follows: "Any person, association of persons, firm or corporation, or the agent, officer or other representative of any person, association of persons, firm or corporation lending money in this State who shall willfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, by any contract, contrivance, or device whatever, directly or indirectly, by way of commissions, discount, exchange, interest, pretended sale of any article, assignment of salary or wages, inspection fees or other fees or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both principal and interest, to the party charged such usurious interest, and shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than one hundred dollars, or be imprisoned in the county jail not more than ninety days or both, in the discretion of the court."

fixing a legal rate of interest, and declaring it to be criminal usury to charge *for the use of money* in excess of the specified statutory percentage of the principal per annum, the transaction itself will be regarded as infected with usury and subject to the penalties the law provides therefor, regardless of the form, device or cloak by which it is accomplished. 27 R. C. L. page 223. But compare: Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 24 A. S. R. 234.

But if a transaction is one by which a person needing capital for a business venture, undertakes to finance his venture by the distribution and sale of his negotiable bonds, through a bond-selling house engaged in selling bonds of like character to small buyers, and it is contemplated that the money needed and agreed to be raised to finance the venture, is to be raised only through the *bona fide* sale of the venturers' bonds to many buyers, by means of the bond-selling facilities of a bond trustee named in a mortgage securing the bonds, and not merely furnished or lent out of the trustee's own capital, a *bona fide* money consideration agreed to be charged and deducted out of the bond proceeds by the trustee solely *to pay for its services* in distributing and selling the bonds, is not to be regarded as usurious interest though the amount of the services agreed upon and deducted is in excess of the lawful interest rate permitted by statute to be charged for the use of money, unless there is a showing that the real transaction was a loan of money and that the device just referred to is being used as a mere cloak for an actually usurious money-lending transaction, and was so designed and carried out in the foregoing form, in order to defeat the usury law, through the use of a mere business form contemplated as a means to be used to conceal an unlawfully exacted rate of interest on the money involved.   G. L. Miller Co. v. Claridge Manor

Co., 14 Fed. (2nd) 859; Graham v. Fitts, 53 Fla. 1046, 43 Sou. Rep. 512, 13 Ann. Cas. 149.*

On an inquiry whether a contract is one forbidden by law, evidence dehors the written evidence of the agreement is admissible to show that, though legal on its face, the agreement is in fact illegal, so a charge of usury may be interposed as a defense, even though it contradicts the written agreement. Houghton v. Burden, 228 U. S. 161, 33 Sup. Ct. 491, 57 L. Ed. 790. Parol testimony can be introduced for the purpose of showing the real transaction between the parties and for the purpose of showing that an agreement in writing as drawn, is a mere subterfuge, and was made with the purpose and intent of evading the usury laws. Train v. Collins, 2 Pick. (Mass.) 145; Denyse v. Crawford, 18 N. J. L. 325. But the burden is strongly on him who would avoid a debt on the ground of usury, when the usury charged is under the law made a crime. Houghton v. Burden, *supra.*

The record in this case shows that an issue on disputed facts was duly made and tried as to whether or not the transaction involved in this case fell within any class of usurious transactions that are denounced by our statutes. Both the Master and the Chancellor held that defendant's allegations in the affirmative had not been proved. The nature of the evidence is such that we cannot say that the decree appealed from is on the facts disclosed, clearly

---

*Section 6938 C. G. L., 4851 R. G. S., contains a provision that reads as follows: "The provisions of this section shall not apply to sales of bonds in excess of one hundred dollars and mortgages securing the same, or money loaned on bonds." This proviso is an apparent recognition of the rule which has just been stated in the opinion. This distinguishing test appears to be whether the transaction is a bona fide bond selling one, or is simply a money lending one.

wrong. Therefore the decree must be affirmed under the rule often reiterated by us to the effect that findings of the facts of a chancery case will not be disturbed where it does not appear that such findings are clearly erroneous, or that they proceeded from a consideration of the evidence in the light of inapplicable principles of law. Palm Beach Estates v. Croker, 106 Fla. 617, 143 Sou. Rep. 792.

Affirmed.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.
BROWN, J., not participating.